Argued October 4, affirmed in part, reversed in part
November 16, 1966

# KRUSE *v.* WARREN NORTHWEST, INC., ET AL

420 P. 2d 63

*Edwin J. Peterson,* Portland, argued the cause for appellant. With him on the briefs were James D. Fournier, Mt. Angel, and Tooze, Powers, Kerr, Tooze & Peterson, Portland.

*Robert L. Myers,* Portland, argued the cause for respondent Warren Northwest, Inc. With him on the brief were Shuler, Rankin, Myers & Walsh, Portland.

*John J. Higgins,* Portland, argued the cause for respondent Lowell A. Johnston. With him on the brief were Black, Kendall, Tremaine, Boothe & Higgins and Michael H. Schmeer, Portland.

*Garr M. King,* Portland, argued the cause for respondent Donald L. Conner. On the brief were Morrison & Bailey, Portland.

Before McALLISTER, Chief Justice, and PERRY, SLOAN, O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

SLOAN, J.

Plaintiff was injured when she was struck by defendant Conner's automobile. In this action for her injuries, the trial court sustained a motion for involuntary nonsuit in favor of all three defendants.

The court held plaintiff guilty of contributory negligence as a matter of law. In addition, Warren Northwest, Inc., was held not to have had any duty relative to plaintiff. Plaintiff appeals. A summary of the evidence, most favorable to plaintiff, will describe the accident and the identity and relationship of the parties.

Before 1963, U. S. Highway 99E south of Canby, Oregon, was a two-lane highway of the usual kind. South of Canby the highway crossed a bridge over the Molalla River. In 1963 defendant Warren Northwest, Inc., was awarded a contract by the State Highway Department to expand this highway to four lanes. This was done by building an additional two lanes and by the building of another two-lane bridge over the Molalla River. In November of 1963, the construction of the additional highway, except for the bridge, was sufficiently complete to open it for traffic. After the additional two lanes were open, traffic approached this bridge from both the north and the south on a typical four-lane highway. At the approaches to the bridge barriers were erected by the highway department to converge the traffic into two lanes to cross the bridge.

These barriers were similar to those that are now commonplace in highway construction to divert traffic from four lanes into two and vice versa. In this instance our concern is with the barriers that were erected south of the bridge and with the lack of any signs north of the bridge to warn the drivers of southbound vehicles that the barriers were to be expected. The barriers south of the bridge were described as being like saw horses painted with zebra like stripes of black and white. There were no reflectors or lights on the barriers. The witnesses testified that they were

difficult to see in the hour of darkness. Sandbags, painted yellow, were also used. When the barriers were first erected some cones with flashing lights were placed along the lines of the intended traffic pattern. These cones had been knocked down and had not been replaced when the accident in question occurred.

The placement of these barriers south of the bridge was such as to create what was described by the witnesses as an island between the north and southbound lanes. The width and length of the island is not specified in the record. A highway department map, in evidence, would indicate that it was funnel shaped, with the narrow end at the north from which it abruptly widened to the approximate width of a lane of traffic. The island appears to have extended to the south for perhaps a hundred feet. On each side of the island were the lanes of travel for north and southbound traffic. The narrow end of the island was only a few feet from the southerly limits of the bridge and was designed to compel southbound traffic into the westerly or right lane of travel. Defendant Johnson, a State Highway Department engineer was responsible for the placing of the barriers and for their maintenance.

On the evening of December 28, 1963, plaintiff, Mrs. Kruse, in a car driven by her husband, approached this bridge from the north. The jury could have believed that because of the lack of any warning of the presence of the barriers to the north of the bridge and because of the failure to have any lights on the barriers that Mr. Kruse was unable to see them. As a result, he drove his car into the barriers south of the bridge and into the island we have described where it stopped. The car stopped on top of some part of a broken barrier in a way which apparently lifted

the rear wheels from the pavement so that the car could not move.

It is important to describe, as best we can from the record, the position of the Kruse car at that time. It would have been within the area limited to southbound traffic on the four-lane highway if the barriers separating the traffic by the described island had not been there. There was a yellow line on the highway which marked the easterly edge of the lanes for southbound traffic as well as the westerly edge of the lane for northbound traffic. The evidence most favorable to plaintiff would establish that the Kruse car was two feet west of this line. That is, two feet west of the westerly limit of the lane for northbound traffic. The barriers to the south of the car which were there for the purpose of diverting northbound traffic into a single lane to cross the bridge, were still in place. The evidence would permit a belief by plaintiff and other participants to be shortly mentioned that these barriers, which were in front of the stalled Kruse car, afforded to the Kruse car, and to plaintiff, a sanctuary from northbound traffic approaching from the south of the island.

Within a few minutes after the Kruse car stopped, a passing motorist, a nearby resident and some men from a tavern across the road came to the assistance of Mr. and Mrs. Kruse. Mr. Kruse attempted to back the car without success. One of the men then placed a sandbag under the left front wheel to attempt to give the car more traction. This man, and plaintiff and another man were on the left or easterly side of the car. The relative position of these three people, plaintiff and the two other men is not certain. We read the testimony to place Mrs. Kruse near the left front fender. She said she was close to the side of the car

but was unable to estimate how many inches away she may have been. To her right was the man who had, apparently, placed the sandbag under or near the left front wheel. The position of the third man is indefinite. Another man was at the left front of the car. They were preparing to push the car as soon as Mr. Kruse started to back it away.

While plaintiff, and the men just mentioned were in the position described, defendant Conner approached from the south. Conner drove his car so close to the Kruse car that his car struck plaintiff and one of the other men who was near her. This man was near the side of the Kruse car but his position, as above stated was otherwise indefinite. He was killed. At the instant of the impact plaintiff testified that she was bending over to see how the other participant had placed the sandbag. She did not remember that she saw the approaching car nor anything else about the accident. The man to her right testified that he saw the car approaching and that he "threw" himself against the side of the Kruse car, facing it. The Conner car, he testified, brushed the clothing on his back. He also testified that he thought Mrs. Kruse was to his left and somewhat behind him. The man in front of the car estimated that the Conner car came within six inches of where he was standing. This summarizes the evidence that prompted the trial court to hold that plaintiff was guilty of contributory negligence as a matter of law. The court found that plaintiff had voluntarily placed herself in a position of peril, so much so that her negligence was beyond dispute. We think the court erred.

■■ The comments of the trial judge in ruling on the motion for an involuntary nonsuit cause us to believe that the court failed to consider the evidence in

the light most favorable to plaintiff. He stated that the evidence placed plaintiff some two feet into the northbound or Conner's lane of travel. This ignores the other evidence that the Kruse car was about two feet from the yellow line dividing the two lanes of traffic, that plaintiff was close to the car and that the Conner car came within inches of the side of the Kruse car. We think it was for the jury to decide, from the evidence of all of the existing circumstances, plaintiff's position when she was struck or if she was in so perilous a position as to hold that she was negligent as a matter of law. Plaintiff, and the other surviving witnesses who were near her, placed reliance on the position of the barriers that were to the south of the car and which could have provided an element of protection from northbound traffic. How well-placed this reliance was, was a jury question. This must be considered with the evidence that the unobstructed width of the northbound lane available to Conner was about 25 or 30 feet.

■ It is evident that the jury could have found negligence on the part of both Johnson and Conner. This is scarcely disputed and the case should have gone to the jury as to those defendants. In respect to defendant Warren Northwest, Inc., there was no evidence of any duty on its part that was relevant to this accident. The judgment as to Warren Northwest, Inc., is affirmed. The judgment in favor of the other defendants is reversed.